IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SHELBOURNE NORTH WATER STREET, L.P.,<br><br>                  Alleged Debtor. | Chapter 11<br><br>Case No. 13-[   ] ([  ]) |

## DECLARATION OF RICHARD O'TOOLE
## ON BEHALF OF RMW CLP ACQUISITIONS, LLC
## IN SUPPORT OF INVOLUNTARY PETITION

I, Richard O'Toole, hereby declare as follows:

1. I am over the age of eighteen, competent, and authorized in all respects to make this Declaration on behalf of RMW CLP Acquisitions, LLC ("RMW CLP") in support of the involuntary petition for relief filed by the Petitioning Creditors[1] contemporaneously herewith (the "Petition") against Shelbourne North Water Street, L.P. (the "Alleged Debtor"). Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, work done by me or others under my supervision and direction, my opinion, and my business experience. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

2. I am an executive vice president of The Related Companies, L.P. ("Related") and a member of the investment committee of Related Real Estate Recovery Fund, LP. RMW CLP is a limited liability company who is an affiliate of Related. I am also a vice president of RMW CLP.

---

[1] The Petitioning Creditors are RMW Acquisition Company, LLC ("RMW"), RMW CLP Acquisitions LLC ("RMW CLP"), Thornton Tomasetti, Inc., and Cosentini Associates.

{00139367.DOC; 1}

3.  The Alleged Debtor is a Delaware limited partnership formed on July 14, 2006[2] that owns an approximate 2.2 acre property located at the address commonly known as 400 East North Water Street, Chicago Illinois (the "Mortgaged Property").[3]

### The Mechanic Liens

4.  RMW CLP is the assignee of two mechanic lien claims filed against the Alleged Debtor and the Mortgaged Property in an amount not less than (i) $10,377,417 for supplying and installing foundations and related work by Case Foundation Company (the "Case Claim"), and (ii) $165,746 for professional land surveying services provided by PLCS Corporation (the "PLCS Claim," and together with the Case Claim, the "Mechanic Lien Claims").

### The Assignment and Involuntary Petition

5.  On or about August 26, 2013, RMW CLP was assigned the PLCS Claim. On or about July 9, 2013, RMW CLP was assigned the Case Claim.[4] Documents evidencing the assignments of the Mechanic Lien Claims are attached hereto as **Exhibit A**. The Mechanic Lien Claims were not acquired by RMW CLP for the purpose of filing the Petition and initiating an involuntary bankruptcy against the Alleged Debtor.

6.  As of September 30, 2013, the Alleged Debtor owes the principal amount of $10,543,163 to RMW CLP together plus applicable interest, costs, and other charges on account of the Mechanic Lien Claims.

---

[2] The Alleged Debtor's General Partner is Shelbourne North Water Management, LLC and its Limited Partner is Garrett E. Kelleher.

[3] The property index numbers of the Mortgaged Property are: 17-10-221-007-0000, 17-10-221-012-0000, 17-10-221-014-0000, 17-10-221-072-0000, and 17-10-221-073-0000.

[4] The assignment documents were held in escrow and released on October 7, 2013.

7. On October 9, 2013, RMW CLP along with other Petitioning Creditors filed the Petition against the Alleged Debtor. Contemporaneously with the Petition, RMW CLP has filed a partial waiver of its security interest (i) up to the amount, and not to exceed, $15,000 as to the Case Claim, and (ii) up to the amount, and not to exceed, $5,000 as to the PLCS Claim.

8. It is the intention of RMW CLP, subject to prior court approval -- either alone or with the joinder of other creditors -- to file, fund and seek confirmation of a plan of reorganization under Chapter 11 of the Bankruptcy Code for the benefit of the creditors of this estate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: October 9, 2013

_____
Richard O'Toole

# EXHIBIT A

EXHIBIT A

# AGREEMENT FOR ASSIGNMENT
# OF MECHANICS LIEN AND RELATED RIGHTS

This Agreement for Assignment of Mechanics Lien and Related Rights ("Agreement") is entered into as of July 9, 2013 (the "Effective Date"), by and between Case Foundation Company, a Maryland corporation ("Assignor"), and RMW CLP Acquisitions LLC, an Illinois limited liability company (together with its successors and assigns, "Assignee"). Assignor and Assignee are "the Parties."

## RECITALS

A. Assignor entered into a written contract with Chicago Spire, LLC ("Spire") dated September 24, 2007 to supply and install foundations, including slurry walls, secant and drilled pier walls, tower steel cofferdam, jet grouting, tower rock caissons, belled caissons, freight tunnel abandonment work, repairing sheeting and water/battered anchor pile reinforcement of the Chicago River wall, earth retention, dewatering, utility relocation, and tower double caisson cofferdams (the "Foundation Contract") for the construction of a project commonly known as the Chicago Spire Tower ("the Project") on real property owned by Shelbourne North Water Street, L.P. (the "Owner").

B. On November 14, 2008, Assignor served on Owner Case Foundation's 770 ILCS §§60/21, 24, 27 & 28 Notice alleging non-payment in the amount of $10,644,931.65 for work performed under the Foundation Contract, including the full amount of submitted Requests for Change Orders (RCOs), an authentic photocopy of which is attached to this Agreement as **Exhibit 1** ("Assignor's Notice"). On December 12, 2008, Assignor recorded in the offices of the Cook County Recorder of Deeds as Document Number 0834739012 a mechanics lien claim in the amount of $10,477,417, attached as **Exhibit 2** ("Assignor's Lien Claim") alleging nonpayment for work performed by Assignor under the Foundation Contract, including a compromised amount of RCOs.

C. On June 30, 2010, Lorig Construction Company filed a Complaint to Foreclose Mechanics Lien and For Other Relief initiating the lawsuit entitled *Lorig Construction Co. v. Shelbourne North Water Street, LP, et al.*, No. 10 CH 27970 in the Circuit Court of Cook County, IL (the "Lawsuit"). In the Lawsuit, Assignor filed a Counterclaim and on February 10, 2011 filed an amended Counterclaim to Foreclose Mechanics Lien and For Other Relief against Spire, Owner, Garrett Kelleher ("Kelleher") and others, an authentic photocopy of which is attached as **Exhibit 3** ("Assignor's Amended Counterclaim").

D. Effective October 12, 2010, Assignor, Spire, Owner and Kelleher entered into that certain Litigation & Second Forbearance Agreement, attached as **Exhibit 4** (the "Spire Litigation Forbearance Agreement") under which Spire, Owner and Kelleher agreed to entry of a Consent Judgment of Foreclosure, attached as **Exhibit 5** (the "Mechanics Lien Judgment") in favor of Assignor and Assignor agreed to forbear from enforcement of the Mechanics Lien Judgment until December 31, 2011. The Mechanics Lien Judgment was clarified by Court Order dated March 18, 2011 attached as part of Exhibit 5 ("Clarifying Order").

E. Kelleher had signed a written guaranty of all obligations of Spire under the Foundation Contract, an authentic photocopy of which is attached as **Exhibit 6** (the "Guaranty"). Effective October 12, 2010, Assignor and Kelleher entered into that certain Second Guaranty Forbearance Agreement, an authentic photocopy of which is attached as **Exhibit 7** (the "Guaranty Litigation Agreement") under which Kelleher agreed to the entry of a Consent Judgment on the Guaranty in favor of Assignor, an authentic copy of which is attached as **Exhibit 8** (the "Guaranty Judgment") and Assignor agreed to forbear from entering the Guaranty Judgment until June 30, 2012.

F. On February 10, 2011, the Court in the Lawsuit entered the Mechanics Lien Judgment.

G. Assignor has not yet moved for entry of the Guaranty Judgment.

H. Assignor has agreed presently to assign to Assignee, and Assignee has agreed to accept from Assignor, (a) all of Assignor's claims, rights, title and interest in and related to the Project, Assignor's Notice, Assignor's Lien Claim, Assignor's Counterclaim, Assignor's Amended Counterclaim (except Count IV), the Spire Litigation Agreement, the Mechanics Lien Judgment, the Foundation Contract, the Lawsuit, including all claims that Assignor either asserted or could have asserted therein other than regarding the Guaranty, the Guaranty Litigation Agreement, the Guaranty Judgment and Count IV of the Amended Counterclaim (collectively the "Presently Assigned Rights"), on the terms and conditions set forth below.

I. All rights in the Guaranty, the Guaranty Litigation Agreement, the Guaranty Judgment and Count IV of the Amended Counterclaim (the "Future Assignable Rights") are to be held by Assignor in trust and without modification, amendment or other compromise for the benefit of Assignee after the assignment of the Presently Assigned Rights. Together, the Presently Assigned Rights and the Future Assignable Rights are the Rights.

## AGREEMENTS

NOW, THEREFORE, in consideration of the payment and assignment of rights provided for herein, the Parties covenant and agree as follows:

1. Recitals. The foregoing recitals are incorporated into and constitute an integral part of this Agreement. This Agreement shall be interpreted in light of those Recitals.

2. Payment & Assignment. (a) Assignee agrees to pay to Assignor the sum of Eight Million Seven Hundred Fifty Thousand U.S. Dollars ($8,750,000) (the "Assignment Fee"), by depositing the Assignment Fee with a nationally recognized escrow agent (the "Escrow Agent") for the benefit of Assignor on or before August 14, 2013. (b) The escrow agreement attached to this Agreement as Exhibit 12 ("Escrow Agreement") provides (i) for release of the Assignment Fee to Assignor and release of Exhibits 6, 7, 8 and 11 to Assignee upon: (A) Assignor's filing of

a motion in the Lawsuit for entry of the Guaranty Judgment, attaching the Guaranty Judgment attached as Exhibit 8 which has been executed by counsel for Kelleher and shall be executed by counsel for Assignor (the "Motion"), (B) Assignor's presentation of the Motion on or before August 26, 2013 to the Court in the Lawsuit (unless the Court is not sitting on August 26, 2013 and then on the earliest available date when the Court is sitting) and (C) the earlier of: (x) October 31, 2013 (regardless of whether the Court has entered, or ever enters, the Guaranty Judgment) or (y) the date Assignor deposits into the escrow a copy of the Guaranty Judgment as entered by the Court, (ii) Escrow Agent will deposit the Assignment Fee in an interest-bearing account with a federal savings and loan association, national banking association, or other federally insured banking institution with which Escrow Agent has established a banking relationship, (iii) all interest which must accrue on the Assignment Fee will inure to the benefit of Assignor and (iv) any compensation for Escrow Agent's services will be paid by Assignee.

(c)     Effective upon Assignor's delivery of the Assignment Fee to the Escrow Agent, Assignor: (i) irrevocably assigns, transfers and conveys to Assignee, and Assignee accepts, all of Assignor's right, title, interest, and privileges in and pertaining to the Presently Assigned Rights, and (ii) agrees to perform as set forth in Subparagraph 4.b. below concerning the Future Assignable Rights.

(d)     Effective upon Escrow Agent's delivery of the Assignment Fee to Assignee, Assignor irrevocably assigns, transfers and conveys to Assignee, and Assignee accepts, all of Assignor's right, title, interest, and privileges in and pertaining to the Future Assignable Rights.

3.     Assignor Representations, Warranties and Covenants.

Assignor makes no representation, warranty or covenant except as set forth below in this Paragraph 3:

(a)     The Rights are in full force and effect;

(b)     Assignor knows of no event which would constitute a default by Assignor under or pertaining to any of the Rights;

(c)     Assignor is the sole legal owner of, has full legal title to and is possessed of the only interest in the Rights and has full authority to transfer and convey the Rights to Assignee;

(d)     Assignor has not assigned, pledged, transferred, encumbered, conveyed or otherwise compromised the Rights or any portion thereof to any party, except to Assignee pursuant to this Agreement;

(e)     Assignor has received no payment toward the Mechanics Lien Judgment, the Assignor's Lien Claim (except the "2009 Payments" identified in the Mechanics Lien Judgment), the amounts due and owing Assignor under the Foundation Contract as asserted in the Amended Counterclaim, or the Guaranty.

4. <u>Additional Documents & Obligations</u>. (a) Contemporaneously upon Assignor's delivery of the Assignment Fee to the Escrow Agent as provided in paragraph 2 to this Agreement, Assignor agrees to execute and contemporaneously deliver to Assignee (i) all documents reasonably necessary to convey the Presently Assigned Rights to the Assignee, including duly executed Notices of Assignment of Mechanics Lien Claim and Mechanics Lien Judgment in the forms attached as Exhibits 9 and 10, respectively (and the Parties do not intend any present assignments of the Guaranty, the Guaranty Forbearance Agreement or Guaranty Judgment by the assignment of any of the Presently Assigned Rights), and (ii) substitution of counsel in the Lawsuit. (b) After Assignee's delivery of the Assignment Fee to the Escrow Agent as provided in paragraph 2, counsel for Assignor agrees to move for entry of the Guaranty Judgment (the "Motion") without recourse to Assignor if the Motion is denied. After the earlier of Assignor's deposit into the Escrow of an entered copy of the Guaranty Judgment or October 31, 2013, and contemporaneously with Escrow Agent's release of the Assignment Fee and accrued interest to Assignor, all as provided in Paragraph 2 of this Agreement, Assignor shall assign, and Assignee shall accept, the Future Assignable Rights and Escrow Agent shall deliver to Assignee the documents representing the Future Assignable Rights and the Assignment of the Guaranty Judgment in the form attached as Exhibit 11 to this Agreement signed by Assignor. (c) Assignee is authorized to perform any and all acts necessary to enforce or perfect its interest in the Rights, including presenting the executed Notices of Assignment with the Cook County Recorder of Deeds for recording. Assignor also agrees to execute and deliver to Assignee any additional documents reasonably necessary to effectuate the assignment and transfer of the Rights to Assignee. The Parties shall cooperate fully and execute all supplementary documents and take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

5. <u>Assignor's Duty to Cooperate</u>. Assignor agrees to cooperate with Assignee in Assignee's enforcement of the Rights which duty of cooperation may include, but is not limited to, granting Assignee access to and use of Assignor's Project files and other documents generated or maintained by Assignor, the filing of pleadings and/or motions in the Lawsuit, attending hearings, securing the attendance of witnesses within its control for deposition and/or trial, attending depositions or trial, and responding to discovery requests. Assignor agrees that neither it nor its attorneys will seek, be compensated for, or be entitled to reimbursement for the costs, expenses or attorneys fees it incurs in satisfying its obligation under this Paragraph.

6. <u>Bankruptcy</u>. Assignee agrees that the filing of a petition for bankruptcy or reorganization or similar proceeding by or against Owner, Spire, Kelleher or other party to the Lawsuit, except Assignor, shall not excuse Assignee's obligations under this Agreement.

7. <u>Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the Parties, their successors in interest and assigns.

8. <u>Amendment</u>. No modification, amendment, discharge or change of this Agreement shall be valid unless in writing and signed by the party against which enforcement is

sought. The waiver by either party of any breach of any term, covenant or condition contained in this Agreement shall not be deemed to be a waiver of any subsequent breach.

9. <u>Exclusive Agreement</u>. This Agreement and its Exhibits merge all understandings and agreements between the Parties and alone fully and completely express the Parties' Agreement on the Rights. Neither party is relying upon any statement or representation, not embodied in this Agreement, made by the other regarding the Rights. The preparation of this Agreement has been a joint effort of the Parties and the resulting documents shall not be construed more severely against one of the Parties than the other.

10. <u>Illinois Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

11. <u>No Partnership</u>. Nothing contained in this Agreement shall be deemed or construed as creating the relationship of principal and agent or of partnership or of joint venture between the Parties, it being understood and agreed that no act of a party shall be deemed to create any relationship between the Parties other than as set forth in this Agreement.

12. <u>Severability</u>. If any term or provision of this Agreement, or the application thereof to any person or circumstance, shall be determined to be invalid or unenforceable by a court of competent jurisdiction to any extent, then the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby.

13. <u>Authority</u>. Each party represents and warrants that it is duly formed and in good standing, and has full power and authority to enter into this Agreement and has taken all legal action necessary to carry out the transaction contemplated by this Agreement, so that, when executed, this Agreement constitutes a valid and binding obligation enforceable in accordance with its terms.

14. <u>No Third Party Beneficiaries</u>. There are no intended beneficiaries of this Agreement other than the Parties.

15. <u>Confidentiality of Agreement</u>. The terms of this Agreement are confidential and are not to be disclosed to any person other than the Parties' respective parents or subsidiaries and the directors, employees, auditors, accountants, tax preparers, taxing authorities, regulatory agencies, reinsurers, attorneys and government agencies regulating the conduct of the Parties or their parents or subsidiaries and Escrow Agent. The Agreement may be disclosed to such other persons as required by law. If disclosure is required by law, the disclosing Party will notify the other Party of its intent to make such disclosure not less than seven (7) days prior to disclosure. However, in the event a Party is required to commence an action to enforce any terms or provisions of this Agreement, nothing in this Agreement shall preclude that Party from pleading such terms of this Agreement that it alleges were breached in its complaint without the other Party's prior consent.

16. <u>Counterparts; Signatures.</u> This Agreement may be executed in counterparts, each of which shall be deemed an authentic original, but all of which together shall constitute one and the same instrument. A signature to this Agreement delivered via email PDF shall be deemed an original binding signature.

IN WITNESS WHEREOF, the undersigned have executed this Agreement for Assignment of Mechanics Lien and Related Rights as of the Effective Date.

ASSIGNOR:                                          ASSIGNEE:

CASE FOUNDATION COMPANY,            RMW CLP ACQUISITIONS LLC,
  a Maryland corporation                         an Illinois limited liability company

By: *Patrick O'Neill*                              By: _____
Name: PATRICK O'NEILL                              Name: _____
Title: V.P., FINANCE                               Title: _____

16. <u>Counterparts; Signatures</u>. This Agreement may be executed in counterparts, each of which shall be deemed an authentic original, but all of which together shall constitute one and the same instrument. A signature to this Agreement delivered via email PDF shall be deemed an original binding signature.

IN WITNESS WHEREOF, the undersigned have executed this Agreement for Assignment of Mechanics Lien and Related Rights as of the Effective Date.

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| CASE FOUNDATION COMPANY,<br>a Maryland corporation | RMW CLP ACQUISITIONS LLC,<br>an Illinois limited liability company |
| By: _____<br>Name: _____<br>Title: _____ | By: _[signature]_<br>Name: CURT R. BAILEY<br>Title: PRESIDENT |

# AGREEMENT FOR ASSIGNMENT
# OF MECHANICS LIEN AND RELATED RIGHTS

This Agreement for Assignment of Mechanics Lien and Related Rights ("Agreement") is entered into as of August 23rd, 2013 (the "Effective Date"), by and between PLCS Corporation d/b/a Gremley & Biedermann, Inc. and James, Schaeffer & Schimming, Inc. (collectively, "Assignor"), and RMW CLP ACQUISITIONS LLC, an Illinois limited liability company (together with its successors and assigns, "Assignee"). Assignor and Assignee are "the Parties."

## RECITALS

A. On June 30, 2010, Lorig Construction Company filed a Complaint to Foreclose Mechanics Lien and For Other Relief initiating the lawsuit entitled *Lorig Construction Co. v. Shelbourne North Water Street, LP, et al.*, No. 10 CH 27970 in the Circuit Court of Cook County, IL (the "Lawsuit"). In the Lawsuit, on or about September 30, 2010, Assignor filed a Counterclaim to Foreclose Mechanics Lien and For Other Relief against Shelbourne North Water Street, L.P. ("Owner"), Shelbourne Development Group, Inc. ("Shelbourne Development"), Anglo Irish Bank Corporation, and others, an authentic photocopy of which is attached as **Exhibit 1** ("Assignor's Counterclaim").

B. As detailed in Assignor's Counterclaim, on or about August 27, 2007, Assignor entered into a written contract with Owner through Owner's authorized agent/representative, Shelbourne Development Group ("Shelbourne Development") to provide professional land surveying services on Owner's behalf for the construction of a project commonly known as the Chicago Spire Tower ("the Project") on real property owned by Owner (the "Property") for the original contract amount of $9,875.00 (the "Land Surveying Contract"). hereafter, with the knowledge and approval of Owner, Shelbourne Development ordered and approved the completion of certain extras for the Project and the Property by Assignor in the total amount of $167,759.00 (the "Extras") thereby increasing the total Land Surveying Contract amount to $174,634.00. Up through October 31, 2008, PLCS's last date of work at the Project, PLCS furnished substantial land surveying services for the Project at the Property pursuant to the Land Surveying Contract (including Extras).

C. On December 29, 2008, Assignor recorded in the offices of the Cook County Recorder of Deeds its Mechanic's Lien Notice and Claim as Document Number 0836429057 in the amount of $165,746.00 ("Assignor's Lien Claim"), an authentic copy of which is attached to this Agreement as **Exhibit 2** alleging nonpayment for work performed by Assignor under the Land Surveying Contract, including Extras and after setoff for partial payment by Shelbourne Development. On December 29, 2008, Assignor served a copy of the Assignor's Lien Claim on Owner through Owner's authorized agent/representative, Shelbourne Development, ("Assignor's Notice"), an authentic photocopy of which is attached to this Agreement as **Exhibit 3**.

D. On August 26, 2013, the Court in the Lawsuit entered a Consent Judgment Order granting PLCS's Motion for Partial Summary Judgment (the "PLCS Consent Judgment"), an authentic copy of which is attached hereto as **Exhibit 4**.

F.  Assignor has agreed to assign to Assignee, and Assignee has agreed to accept from Assignor, all of Assignor's claims, rights, title and interest in and related to Assignor's Notice, Assignor's Lien Claim, Assignor's Counterclaim, the PLCS Consent Judgment, the Land Surveying Contract (including the Extras), any other contracts or agreements related to PLCS's work at the Project and Property, and any and all claims in law or in equity that Assignor could either assert in the Lawsuit, against the Property and Project, or against any other person or entity based upon Assignor's work on the Project and Property (collectively the "Assigned Rights"), on the terms and conditions set forth below.

## AGREEMENTS

NOW, THEREFORE, in consideration of the payment and assignment of rights provided for herein, the Parties covenant and agree as follows:

1.  Recitals.  The foregoing recitals are incorporated into and constitute an integral part of this Agreement.  This Agreement shall be interpreted in light of those Recitals.

2.  Payment & Assignment. (a) Assignee agrees to pay to Assignor the sum of One Hundred and Seven Thousand U.S. Dollars ($107,000.00) (the "Assignment Fee"), by cashier's check or, at Assignee's option, by wire transfer to the account of "PLCS", [INSERT WIRE INSTRUCTIONS] (the "Wire Instructions") within 10 days of the Effective Date. If Assignee transfers the Assignment Fee by wire transfer, Assignee agrees to notify Tom Green upon Assignee's initiation of the wire transfer via email at TGreen@plcs-survey.com. Effective either upon Assignee's delivery of the Assignment Fee by cashier's check or upon Assignee's receipt of electronic confirmation from Assignee's bank that the Assignment Fee was transferred by wire in accordance with the Wire Instructions, Assignor: (i) irrevocably assigns, transfers and conveys to Assignee, and Assignee accepts, all of Assignor's right, title, interest, and privileges in and pertaining to the Assigned Rights; (ii) grants unlimited rights and access to Assignee to use all drawings, designs, specifications, notes and other works developed in the performance of the Land Surveying Contract, including the right of use on any other design or construction project, without additional compensation to Assignor; and (iii) assigns to Assignee any and all rights of Assignor in or to any minutes of foreclosure or other title product purchased or acquired by Assignor relating to the Assignor's Lien Claim or the Project.

3.  Assignor Representations and Covenants.

Assignor represents and covenants that, to the best of its knowledge:

(a)  The Assigned Rights are valid and in full force and effect;

(b)  Assignor knows of no event which would constitute a default by Assignor under or pertaining to any of the Assigned Rights and is not aware of any defects or legal deficiencies in the Assigned Rights or any asserted defenses to the enforcement of the Assigned Rights;

(c)  The Assigned Rights have not been waived, released, relinquished, forfeited, satisfied, extinguished, amended, modified, compromised or supplemented;

(d)  The Assignor is the sole legal owner of, has full legal title to and is possessed of the only interest in the Assigned Rights and has full authority to transfer and convey the Assigned Rights to the Assignee;

(e)  Assignor has not assigned, pledged, transferred, encumbered, conveyed or otherwise compromised the Assigned Rights or any portion thereof to any party, except to Assignee pursuant to this Agreement; and

(f)  The Assignor has received no payment toward Assignor's Lien Claim, the PLCS Consent Judgment, or the amounts due and owing Assignor under the Land Surveying Contract as asserted in Assignor's Counterclaim.

4.  Additional Documents.  Contemporaneously upon Assignor's delivery of the Assignment fee as provided in paragraph 2 to this Agreement, Assignor agrees to execute and contemporaneously deliver to Assignee all documents reasonably necessary to convey the Assigned Rights to the Assignee, including duly executed Notices of Assignment of Mechanics Lien Claim and PLCS Consent Judgment in the forms attached as **Exhibits 5 and 6**, respectively, and substitution of counsel in the Lawsuit. Assignee is authorized to perform any and all acts necessary to enforce or perfect its interest in the Assigned Rights, including presenting the executed Notices of Assignment with the Cook County Recorder of Deeds for recording. Assignor also agrees to execute and deliver to Assignee any additional documents reasonably necessary to effectuate the assignment and transfer of the Assigned Rights to the Assignee. The Parties shall cooperate fully and execute all supplementary documents and take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

5.  Defense and Prosecution of Actions.  The Assignee agrees to notify the Assignor in writing and the Assignor agrees to fully cooperate in the Assignee's defense of: (a) any litigation in which any third party asserts a claim adverse to the Assignor's Lien Claim or asserts a lack of priority of the Assignor's Lien Claim over any statutory lien for services, labor or material and (b) that is based on, relates to, or constitutes a material breach of the representations and covenants in paragraph 3 of this Agreement. In the event the adverse claimant prevails or the priority of the Assignor's Lien Claim is defeated by the third-party, whether in whole or in part, the Assignor agrees to pay to the Assignee the loss or damage sustained by the Assignee not exceeding the Assignment Fee.

6.  Assignor's Duty to Cooperate and Preserve.  Assignor agrees to cooperate with Assignee in Assignee's enforcement of the Assigned Rights which duty of cooperation may include, but is not limited to, preserving, maintaining and granting Assignee access to and use of Assignor's Project files and other documents generated or maintained by Assignor, the filing of pleadings and/or motions in the Lawsuit, attending hearings, securing the attendance of witnesses within its control for deposition and/or trial, attending depositions or trial, and responding to discovery requests. Assignor agrees that neither it nor its attorneys will seek, be compensated

for, or be entitled to reimbursement for the costs, expenses or attorneys fees it incurs in satisfying its obligation under this paragraph.

       7.      Bankruptcy. Assignee agrees that the filing of a petition for bankruptcy or reorganization or similar proceeding by or against Owner, Shelbourne Development, or any other party to the Lawsuit, except Assignor, shall not excuse Assignee's obligations under this Agreement.

       8.      Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the Parties, their successors in interest and assigns.

       9.      Amendment. No modification, amendment, discharge or change of this Agreement shall be valid unless in writing and signed by the party against which enforcement is sought. The waiver by either party of any breach of any term, covenant or condition contained in this Agreement shall not be deemed to be a waiver of any subsequent breach.

       10.      Exclusive Agreement. This Agreement and its Exhibits merge all understandings and agreements between the Parties and alone fully and completely express the Parties' Agreement on the Assigned Rights. Neither party is relying upon any statement or representation, not embodied in this Agreement, made by the other regarding the Assigned Rights. The preparation of this Agreement has been a joint effort of the Parties and the resulting documents shall not be construed more severely against one of the Parties than the other.

       11.      Illinois Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

       12.      No Partnership. Nothing contained in this Agreement shall be deemed or construed as creating the relationship of principal and agent or of partnership or of joint venture between the Parties, it being understood and agreed that no act of a party shall be deemed to create any relationship between the Parties other than as set forth in this Agreement.

       13.      Severability. If any term or provision of this Agreement, or the application thereof to any person or circumstance, shall be determined to be invalid or unenforceable by a court of competent jurisdiction to any extent, then the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby.

       14.      Authority. Each party represents and warrants that it is duly formed and in good standing, and has full power and authority to enter into this Agreement and has taken all legal action necessary to carry out the transaction contemplated by this Agreement, so that, when executed, this Agreement constitutes a valid and binding obligation enforceable in accordance with its terms.

       15.      No Third Party Beneficiaries. There are no intended beneficiaries of this Agreement other than the Parties.

16. **Confidentiality of Agreement.** The terms of this Agreement are confidential and are not to be disclosed to any person other than the Parties' respective directors, employees, auditors, accountants, tax preparers, taxing authorities, regulatory agencies, reinsurers, attorneys and government agencies regulating the conduct of the Parties, including, but not limited to, securities markets, rating agencies, and potential purchasers and their counsel as long as such parties have executed a non-disclosure agreement pursuant to which they agree to preserve the confidentiality of this Agreement,. The Agreement may be disclosed to such other persons as required by law. If disclosure is required by law, the disclosing Party will notify the other Party of its intent to make such disclosure not less than seven (7) days prior to disclosure. However, in the event a Party is required to commence an action to enforce any terms or provisions of this Agreement, nothing in this Agreement shall preclude that Party from pleading such terms of this Agreement that it allege were breached in its complaint without the other Party's prior consent.

17. **Counterparts; Signatures.** This Agreement may be executed in counterparts, each of which shall be deemed an authentic original, but all of which together shall constitute one and the same instrument. A signature to this Agreement delivered via email PDF shall be deemed an original binding signature.

IN WITNESS WHEREOF, the undersigned have executed this Agreement for Assignment and Assumption of Mechanics Lien and Related Rights as of the Effective Date.

ASSIGNOR:

ASSIGNEE:

PLCS Corporation d/b/a Gremley & Biedermann, Inc. and James, Schaeffer & Schimming, Inc.

RMW CLP ACQUISITIONS LLC, an Illinois limited liability company

By: _____
Name: G. Thomas Green
Title: President

By: _____
Name: Gary R. Bailey
Title: Authorized Signer