IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SHELBOURNE NORTH WATER STREET, L.P.,<br><br>Alleged Debtor. | Chapter 11<br><br>Case No. 13-12652 (KJC)<br><br>Re: Docket Nos. 21 & 22 |

**OBJECTION OF PETITIONING CREDITORS TO ALLEGED DEBTOR'S MOTION TO EXTEND DEADLINES TO RESPOND TO INVOLUNTARY PETITION AND SARE MOTION PENDING ADJUDICATION OF VENUE TRANSFER MOTION**

The Petitioning Creditors,[1] by and through their undersigned counsel, hereby object (the "Extension Objection") to the motion (the "Deadline Extension Motion") [D.I. 21] of Shelbourne North Water Street, L.P. (the "Alleged Debtor") requesting extension of its deadlines to respond to the Involuntary Petition and the SARE Motion[2] pending adjudication of its motion to transfer venue (the "Transfer Motion") [D.I. 20] of the above-captioned involuntary bankruptcy case (the "Involuntary Case") to the Eastern Division of the Bankruptcy Court for the Northern District of Illinois (the "Illinois Bankruptcy Court"). In support of the Extension Objection, the Petitioning Creditors hereby respectfully state as follows:

**PRELIMINARY STATEMENT[3]**

1.  The issue before the court is whether an entity that has conducted no business and has done nothing but stall its creditors for more than three years can further forestall proceedings by (a) claiming that the state it chose to organize its own business is inconvenient, when its

---

[1] On October 9, 2013, RMW Acquisition Company, LLC ("RMW"), RMW CLP Acquisitions LLC ("RMW CLP"), Thornton Tomasseti, Inc. ("Thornton") and Cosentini Associates ("Cosentini," and collectively with RMW, RMW CLP, and Thornton, the "Petitioning Creditors") filed an involuntary Ch. 11 petition (the "Involuntary Petition") against the Alleged Debtor in the United States Bankruptcy Court for the District of Delaware (the "Court").

[2] On October 17, 2013, the Petitioning Creditors filed the *Motion of Petitioning Creditors to Designate Proceeding as Single Asset Real Estate Case* [D.I. 17] (the "SARE Motion").

[3] All capitalized terms in the Preliminary Statement not otherwise defined therein are ascribed the meaning given such terms below.

creditors prefer to be here, and (b) arguing that, notwithstanding the crystal clear Federal Rules to the contrary, the Court should stay the important decision of whether to enter an order for relief while it first determines venue. The resounding answer is no. The Debtors' delay ploys must stop and the chapter 11 reorganization process should begin.

2. The Petitioning Creditors filed the Involuntary Petition in this Court, seeking an efficient reorganization of the Alleged Debtor, whose sole asset is the Property. The Property has been in receivership since December 2, 2010, and has languished in the Illinois state court system for over three years – the subject of a multi-year foreclosure action and endless stall tactics by the Alleged Debtor. The Alleged Debtor admits to being in default under the Loan to RMW (a Petitioning Creditor) under its $69.5 million pre-petition loan facility since September 30, 2010, with no financing in place to complete development and construction of the Property. Transfer Motion at ¶ 12-14. RMW has calculated the amount of principal due and owing to be not less than $93,584,601.86 as of the Petition Date. The Alleged Debtor has not paid any of its other creditors for more than three years. Yet, instead of stepping aside to allow its creditors, subject to court approval, to file and confirm a plan of reorganization that will facilitate some distributions to creditors, the Alleged Debtor seeks to delay a resolution of this case.

3. On October 9, 2013, the Petitioning Creditors took the first step towards a plan of reorganization for the Alleged Debtor by filing the Involuntary Petition in the District of Delaware. The Alleged Debtor acknowledges that venue is proper in Delaware. Transfer Motion at ¶26. But, rather than filing an answer to the Involuntary Petition in the first instance, as mandated by Rule 1011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), it has continued its pattern of delay by filing a premature motion to transfer venue – containing numerous inaccurate statements – and requesting that this Court extend the Alleged

2

Debtor's deadlines to answer the Involuntary Petition and the SARE Motion[4] pending the Court's ruling on the improperly filed Transfer Motion. The Court should deny the Deadline Extension Motion.

4. As a threshold matter, it is improper under the Bankruptcy Rules and other authority that has addressed this issue for this Court to first determine whether to transfer venue of a bankruptcy case prior to adjudicating whether the case should be in bankruptcy in the first place. Until the Alleged Debtor consents to the order for relief or there is a trial on the merits on the Involuntary Petition, the Transfer Motion is not appropriately before this Court. Instead, the Court should adjudicate the Involuntary Petition and enter the order for relief and only *then* consider the Transfer Motion.

5. Specifically, the Court should, on shortened notice,[5] (i) deny the Alleged Debtor's request to extend the response deadlines to the Involuntary Petition and SARE Motion, and (ii) as required by the Bankruptcy Rules, set a hearing on the Involuntary Petition "at the earliest possible practicable time." *See* Bankruptcy Rules 1011(b), (e) and 1013(a).

6. In any event, while the Transfer Motion is not properly before the Court at this time, it is important to note that this is not a case where, after hearing the venue facts at a properly scheduled hearing, transfer of venue would be appropriate since "the interests of justice" and "convenience of the parties" do not favor the Alleged Debtor's position. First, the Alleged Debtor concedes proper venue in Delaware as it has availed itself of Delaware law and all attendant benefits when it chose to form as a Delaware limited partnership. It cannot now run

---

[4] With the Declaration of Garrett Kelleher [D.I. 23] and other facts recited in the Transfer Motion, the Alleged Debtor has effectively conceded its designation of this case as a single asset real estate case. Thus, having admitted that the Property is the sole asset, the Alleged Debtor does not need any additional time to respond to the SARE Motion.

[5] The Alleged Debtor moved to shorten notice of the Deadline Extension Motion [D.I. 22]. The Petitioning Creditors consent to shortened notice of the Deadline Extension Motion.

3

from its decision and claim that Delaware is an inconvenient forum or lacks a connection to the Property.  Second, while the Property is located in Chicago, the Petitioning Creditors – including RMW, the Alleged Debtor's senior secured lender and funder of all of the expenses of the Property – have chosen venue of this Involuntary Case in Delaware as the forum to effect Chapter 11 reorganization.  Third, the Property is not a business but rather consists only of raw land and a foundation, which generates no revenue.  Fourth, since the Property is dormant and has had a Receiver in place since December 2, 2010, it is a fiction for the Alleged Debtor to argue that its "principal place of business" is Chicago.  For years, the Alleged Debtor has had no business, no operations, and no nerve center of business or operational decision making in Chicago.  Simply put, the Alleged Debtor does engages in no business whatsoever.

7. The Court should (i) deny the Deadline Extension Motion (ii) and set a hearing on the Involuntary Petition as soon as practicable.

**BACKGROUND**

8. The Alleged Debtor availed itself of this venue when it chose to form itself as a Delaware limited partnership on July 14, 2006 for the purpose of developing an approximately 2.18 acre property located at the address commonly known as 400 East North Water Street, Chicago, Illinois (the "Property").[6]  The Alleged Debtor's general partner is Shelbourne North Water Management, LLC, a Delaware limited liability company, and its limited partner is Garrett E. Kelleher.

9. The Alleged Debtor sought to develop the Property into a high-rise condominium building that has commonly referred to as the Chicago Spire building.  But after the real estate

---

[6] The property index numbers of the Property are:  17-10-221-007-0000, 17-10-221-012-0000, 17-10-221-014-0000, 17-10-221-072-0000, and 17-10-221-073-0000.

4

collapse of 2008 – over five years ago – the Alleged Debtor defaulted on its Loan[7] and ceased development and construction of the Property.

10. On or about June 30, 2010, a mechanic lien creditor, Lorig Construction Company, commenced a foreclosure action (the "Foreclosure Action") against the Alleged Debtor in Illinois state court,[8] and on October 1, 2010, the Lender, RMW's predecessor in interest, filed a counterclaim in the Foreclosure Action itself seeking foreclosure of the Mortgage on the Property. On December 2, 2010, the court appointed a receiver (the "Receiver") to take possession, custody and control of the Property.

11. On or about June 27, 2013, the Lender assigned to RMW the Loan and Loan Documents. As a result, RMW inherited the Foreclosure Action that had been pending for three years. After approximately three months of litigation in the Foreclosure Action, RMW determined that a bankruptcy reorganization of the Alleged Debtor would effectuate a quicker resolution and also provide some return to creditors versus the barely crawling Foreclosure Action.[9]

---

[7]To facilitate the purchase of the Property, the Alleged Debtor entered into a Facility Letter, dated as of July 18, 2006, by and among the Alleged Debtor as borrower, and Anglo Irish Bank Corporation Limited, formerly known as Anglo Irish Bank Corporation plc (the "Lender"), by which the Alleged Debtor initially borrowed the aggregate principal amount of $54.5 million from Lender. The initial loan was ultimately increased to the aggregate principal amount of $69.5 million (together with applicable interest, costs, and other charges under the Facility Letter and associated documents, the "Loan") pursuant to the Third Amendment to the Facility Letter, dated September 11, 2008 (as was amended, restated, modified, or supplemented from time to time, the "Facility Letter"). Pursuant to the Facility Letter, the Lender's extension of the Loan was evidenced by a promissory note (as amended and restated, the "Note"). The Loan is secured by a first lien First Amendment to Mortgage and Security Agreement dated as of September 11, 2008 recorded in the Office of the Cook County, Illinois, Recorder of Deeds on September 11, 2008 as Document No. 0825503092 (the "Mortgage"). The Loan is further secured by a Collateral Assignment and Security Agreement in contracts, licenses, and permits. The Facility Letter, the Note, the Mortgage, and all other documents, financing statements and instruments securing or evidencing the Loan are hereinafter collectively referred to as the "Loan Documents." The Loan matured and became due on October 2, 2009, and the Alleged Debtor became in default under the Loan Documents. At that time the Alleged Debtor and the Lender entered into the Forbearance Agreement, effectively extending the term of the Loan until September 30, 2010. The Forbearance Agreement expired according to its terms on September 30, 2010. The Loan's maturity date has not been further extended, and the Loan is currently in default.

[8]*See Lorig Construction Company v. Shelbourne North Water Street, L.P.*, Case No. 10 CH 27970 (Quinn, J).

[9]RMW's belief that a bankruptcy reorganization will provide a more speedy resolution to this case is based on, among other factors, recent experience in Delaware. An affiliate of RMW, One Madison FM, LLC ("OMF"), recently effectuated a similar process in the Delaware Bankruptcy Court whereby OMF funded and co-proposed a

5


12. On October 9, 2013 (the "Petition Date"), the Petitioning Creditors filed the Involuntary Petition against the Alleged Debtor in this Court. The Foreclosure Action was pending and the Receiver remained in place as of the Petition Date. The Foreclosure Action is stayed pursuant to Section 362 (a) of the Bankruptcy Code.[10]

13. On October 17, 2013, the Petitioning Creditors filed the SARE Motion seeking to designate the proceeding as a single asset real estate case.

14. The Property currently consists of raw land and a foundation.[11] According to the fourteenth report of the Receiver (the "Receiver's Report"), the Property generates no revenue.[12]

15. On October 24, 2013, the Alleged Debtor filed the Transfer Motion, seeking a transfer of venue to the Illinois Bankruptcy Court, and the Deadline Extension Motion seeking an extension of all response deadlines to all motions and other matters – including the Involuntary Petition – until the relief requested in the Transfer Motion has been adjudicated.

---

plan of reorganization with the debtor that allowed OMF to take ownership of a condominium building and provided a return to unsecured creditors who otherwise would not have received any distribution. *See In re FKF Madison Group Owner, LLC*, Case No. 10-11867 (KG). The principals of RMW know their responsibility in bankruptcy and, as stated from the beginning of this Involuntary Case, upon Court approval, RMW intends to fund, file and seek confirmation of a plan of reorganization for the benefit of the creditors of the Alleged Debtor's estate. O'Toole Dec. at ¶ 11. RMW has the immediate capability to do so.

[10] It is unclear why the Alleged Debtor claims that the foreclosure litigation was not stayed by the filing of the Involuntary Petition. Deadline Extension Motion at ¶ 15; Transfer Motion at ¶ 21. It is clear that Bankruptcy Code section 362(a) applies the automatic stay when an involuntary petition is filed under Bankruptcy Code section 303. Bankruptcy Code §§ 362(a), 303. Further, in addition to the plain language of the Bankruptcy Code, the judge in the Foreclosure Action issued an order staying the Foreclosure Action and specifically cancelling the November 5, 2013 hearing and all interim dates. A true and correct copy of the Judge Quinn's order is attached hereto as "**Exhibit B**."

[11] *See Declaration of Richard O'Toole In Support of the Motion to Designate Proceeding as Single Asset Real Estate Case* (the "O'Toole Dec.") (D.I. 18).

[12] *See* Exhibit B to the O'Toole Dec.

## OBJECTION

I. **The Court Should Deny the Deadline Extension Motion, Adjudicate the Involuntary Petition and Enter an Order For Relief Prior to Addressing the Transfer Motion**

16. By the Deadline Extension Motion, the Alleged Debtor seeks entry of an order from the Court extending the applicable deadlines to file its response to the Involuntary Petition, the SARE Motion and any other motion or pleadings filed by any other party in interest in the Involuntary Case. Deadline Extension Motion at ¶ 8. Importantly, the Alleged Debtor acknowledges that Delaware is a proper venue for this Involuntary Case. Transfer Motion at ¶ 26.

17. The relief requested by the Alleged Debtor in the Deadline Extension Motion is prohibited by Bankruptcy Rule 1011, which provides a short and exclusive list of responses that may be filed to an involuntary petition. Neither a motion to transfer venue nor a motion to extend the response deadline to the Involuntary Petition pending adjudication of such motion is on the list of legitimate responses under the Bankruptcy Rules. Bankruptcy Rule 1011 states in relevant part:

> *Rule 1011. Responsive Pleading or Motion in Involuntary and Cross-Border Cases*
>
> (*b*) *Defenses and objections*; *When presented*. Defenses and objections to the petition shall be presented in the manner prescribed by Rule 12 F. R. Civ. P. and shall be filed and served within 21 days after service of the summons, except that if service is made by publication on a party or partner not residing or found within the state in which the court sits, the court shall prescribe the time for filing and serving the response.
>
> *(e) Other pleadings*. No other pleadings shall be permitted, except that the court may order a reply to an answer and prescribe the time for filing and service.

18. Bankruptcy Rule 1011(b) authorizes the Alleged Debtor to do only two things -- either (a) file an answer contesting the petition, or (b) make a motion asserting defenses and

objections to the petitions as provided for under Rule 12 of the Federal Rules of Civil Procedure ("Federal Rules" or "FRCP").  Further, Bankruptcy Rule 1011(e) unambiguously states that "no other pleading shall be permitted."  *See In re David J. Ross*, 135 B.R. 230, 233 (Bankr. E.D. Pa 1991) (holding that scope of a debtor's answer to an involuntary petition is limited to those issues which address the merits of granting involuntary relief); COLLIER ON BANKRUPTCY ¶ 1011.05 (16th ed. 2012) (Except for a reply to an answer, which may be ordered by the Court, "the involuntary petition…and the responsive answer or motions filed by the debtor…are the only pleadings permitted").

19. The relief sought in the Deadline Extension Motion is not prescribed by FRCP 12:

> *(b) How to Present Defenses*.  Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19.

20. Thus, Federal Rule 12(b)(3) provides grounds for dismissal of a case, including dismissal for "improper venue."  The Transfer Motion concedes that Delaware venue is proper and does not assert any other defenses or objections to the Involuntary Petition as provided in FRCP 12(b).  Because the Transfer Motion is not an appropriate response under FRCP 12(b), it must take a back seat to the adjudication of the Involuntary Petition.  Therefore, the Deadline Extension Motion should be denied and the Transfer Motion should not be heard until an order for relief is entered either on consent or after a hearing on the merits.  *See In re Raytech Corp.*, 222 B.R. 19, 22 n.1 (Bankr. D. Conn. 1998) (holding venue transfer motion premature until court first determines whether the case would be administered in that court).

21. More fundamentally, consideration of the Transfer Motion prior to entry of an order for relief or trial on the merits of the Involuntary Petition would prevent "consideration of the contested petition at the earliest possible practicable time" as required by Bankruptcy Rule 1013. *See* Bankruptcy Rule 1013(a) ("The court shall determine the issues of a contested petition *at the earliest practicable time* and forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order") (emphasis supplied).

22. Further, the Petitioning Creditors filed the Involuntary Petition in this District and have a right to have this Court litigate, if necessary, the Involuntary Petition in the jurisdiction of their choice. *See In re PWS Holding Corp.*, 1998 Bankr. LEXIS 549, *4-5 (Bankr. D. Del. Apr. 28, 1998) (SLR) ("[W]hen venue is proper, a debtor's/plaintiffs choice of forum is to be accorded substantial weight and deference"). If the relief sought in the Transfer Motion is granted prior to entry of the order for relief, this fundamental right would be denied.

23. Finally, the Alleged Debtor's contention that a stay is appropriate to avoid duplication because if the Transfer Motion is ultimately granted it will have to re-litigate the same issues before the Illinois Bankruptcy Court is meritless. No matter which court ultimately hears the issue of whether an order for relief should be granted, the briefing will raise the precise same issues. Thus, there is no conceivable basis to argue that duplication is a concern. Moreover, even if the Court ultimately transfers venue – which it should not – this Court has jurisdiction to enter the order for relief and any other order prior to the transfer of venue and such orders need not be re-litigated in the Illinois Bankruptcy Court. *See In re Houghton Mifflin Harcourt Publ'g Co.*, 474 B.R. 122, 138 (Bankr. S.D.N.Y. 2012) (confirming plan of reorganization prior to transferring venue because "venue objections, even if valid, are not jurisdictional").

24. The Bankruptcy Rules and case law authorities cited herein require that the Involuntary Petition be adjudicated prior to any other matters in the case. Accordingly, the Transfer Motion is premature and the Court should deny the Deadline Extension Motion requesting to extend the deadlines to respond to the Involuntary Petition and SARE Motion and adjudicate the Involuntary Petition as soon as practicable.

## **CONCLUSION**

25. The Alleged Debtor's request to extend its deadlines to respond to the Involuntary Petition and SARE Motion pending adjudication of the Transfer Motion is improper and is nothing more than an attempt to delay entry of an order for relief in the Involuntary Case. Rather, as required by the Bankruptcy Rules, the Alleged Debtor should timely file its response to the Involuntary Petition so that the Court may consider "the contested petition at the earliest possible practicable time." The Transfer Motion may only then be adjudicated after the entry of the order for relief.

WHEREFORE, the Petitioning Creditors request that the Court (i) enter an order substantially in the form of the proposed order attached hereto as "**Exhibit A**," (ii) deny the Deadline Extension Motion, and (iii) grant such other and further relief as is proper.

Dated: October 25, 2013
      Wilmington, Delaware

/s/ *Zachary I. Shapiro*
Russell C. Silberglied (No. 3462)
Zachary I. Shapiro (No. 5103)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: silberglied@rlf.com
      shapiro@rlf.com

- and -

Lenard M. Parkins (*pro hac vice*)
Trevor R. Hoffmann (*pro hac vice*)
Jonathan Hook (*pro hac vice*)
John Beck (*pro hac vice*)
HAYNES AND BOONE LLP
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
Telephone: (212) 659-7300
Facsimile: (212) 918-8989
Email: lenard.parkins@haynesboone.com
      trevor.hoffmann@haynesboone.com
      jonathan.hook@haynesboone.com
      john.beck@haynesboone.com

*Attorneys for RMW Acquisition Company, LLC, RMW CLP Acquisitions LLC, Thornton Tomasseti, Inc., and Cosentini Associates*